# Richmond.

## JOBSON v. BRIDGES.

JANUARY 12th, 1888.

Absent, Lewis, P.

MUNICIPAL CORPORATION— *Qualification of officers.*—Acts of Assembly (Acts 1883-4, p. 57), amending charter of city of Portsmouth, provides that the qualifications of any person or persons elected as councilman, shall be adjudged of by the council, and determined by a majority vote thereof":

HELD:

This provision applies only to the case of a contested seat.

Error to judgment of hustings court of city of Portsmouth adjudging the defendant in error, one E. G. Bridges to be the rightful chief of police of said city. To this judgment a writ of error was obtained by the plaintiff in error, Jobson. Opinion states the case.

*A. S. Watts* and *Marshall & Hill*, for the plaintiff in error.

*D. J. Godwin & Son*, for the defendant in error.

HINTON, J., delivered the opinion of the court.

This is a writ of error to a judgment of the hustings court of the city of Portsmouth, adjudging the defendant in error, one E. G. Bridges, to be the rightful chief of police of said

city.   The case arose in this way:. on the 28th of January, 1884, the General Assembly of Virginia passed an act amending and re-enacting certain sections of the new charter of the city of Portsmouth.   Acts 1883–4, p. 57.   By the twelfth section of this amended act, the number of councilmen of that city is increased from fifteen to seventeen, and by the same section it is provided that the two additional councilmen to be elected may be elected in the first instance by the members of the council of the second ward, to which ward these additional members are to belong.   By the forty-first section of the amended act, it is provided that police commissioners may be elected by the city council to hold office for a term of two years from the 1st January, 1884.   Acting under the authority of this amended act, the members of the council of the second ward in said city met on the 4th day of February, 1884, and elected T. J. Barlow and C. P. Edwards as the two additional councilmen to which that ward was entitled, and then certified their election to the council of the city.   The said Barlow and Edwards, having been notified of their election, qualified as councilmen by taking and subscribing the oaths required by law and filing the same in the office of the city clerk.   Afterwards, to-wit, on the 5th of February, 1884, a meeting of the council was held, when there were present the two new members and seven other members elected under the charter of 1882.   This was the first meeting held after the charter passed January 28th, 1884, went into effect.   At this meeting the four police commissioners provided for by the forty-first section were elected, and afterwards, on the 7th of February, 1884, after duly qualifying, met as a board with the mayor, an *ex-officio* member of the board, as president, and elected the plaintiff in error chief of police of the city, and he, having first duly qualified, received on the 13th of February, 1884, from the defendant in error all the property and equipments pertaining to said office, and entered upon the discharge of the duties of the office.   Nothing more was said or done until the 27th of

May, 1884, when the said Bridges notified the plaintiff in error, William A. Jobson, by the advice of counsel, he claimed and demanded the said office, and being refused, he on the 16th day of June, 1884, filed his petition in the hustings court of the city of Portsmouth, claiming that he was still the chief of police of that city, and alleging that the plaintiff in error was not legally elected chief of police, and was not chief of police of the city of Portsmouth, because the board of police commissioners who undertook to elect him were not themselves legally elected, and were not the board of police commissioners of the city, for the reason that a quorum of the council was not present when they were elected police commissioners; and on his motion the court directed a rule *nisi* to be served on the said Jobson and on said board of police commissioners, to show cause why the commonwealth's writ of *mandamus* should not be awarded said Bridges, commanding said Jobson to deliver up the property pertaining to said office of chief of police, and the said E. G. Bridges be restored to the said office of chief of police of said city. On the return-day of the rule, the board of police commissioners filed their return in writing, and under oath, in which they allege that a quorum of the council was present at the time they were elected, and that they were the legally elected and constituted police commissioners of the city of Portsmouth. And on the same day the plaintiff in error appeared and filed his return to the rule, in which he alleged that he was the legally elected and lawful chief of police of that city. To these returns the defendant Bridges filed his demurrer and plea. The cause was then heard upon the replication of the board of police commissioners and Jobson to the plea, and upon the demurrer, and upon an agreed statement of facts; which statement of facts has been hereinbefore substantially set out. The judgment of the court was, in effect, that the plaintiff in error, Jobson, was not the lawful chief of police of said city, and it directed a peremptory *mandamus* be awarded said Bridges, directing the plaintiff in

error, Jobson, to vacate and deliver up to the defendant in error the office of chief of police of said city, and all of the books, papers, and other property of the office in his possession.

The contention of the defendant in error, Bridges, in the court below was based upon a clause of the 12th section of the act of January 28, 1884, which says: "The qualifications of any person .or persons elected as councilman shall be adjudged of by the council, and be determined by a majority vote thereof;" and the construction put upon this clause, both by the council and court, seems to have been that it required that the new members, Barlow and Edwards, should have their qualification passed upon by a majority of the old council of 15 before they could become members of the council, notwithstanding they had qualified themselves by taking and subscribing the proper oaths. In placing this construction upon this clause the court clearly erred. Such a provision is neither unusual nor anomalous, and was intended to give the council an authority similar to that which the constitution gives to the general assembly to determine the right of a member to a seat, if the same should be contested; and it never was intended to be used as a means for preventing a person who had been duly elected and qualified, and had the certificate of election, from taking his seat as a member of the council until the majority of the old council had passed upon his qualifications. It is pretended that the legislature did not have the right to require that the additional members should be elected in the manner provided by this act; and, it being admitted that the provisions of the act were strictly complied with in the election of Barlow and Edwards, they were, in the opinion of this court, entitled to their seats as councilmen as soon as they had secured the tickets of election and qualified themselves by taking and subscribing the proper oaths. It being then, in the opinion of the court, clear that Edwards and Barlow were properly qualified members of the common council of Portsmouth on the 5th February, 1884, when the police commissioners were elected,

and it not being denied that they acted properly in electing the plaintiff in error to the office of chief of police, it follows as a consequence that he must be regarded as entitled to that office. The judgment of the hustings court of Portsmouth is therefore erroneous, and must be reversed; the rule must be discharged, and the petition of the defendant in error, Bridges, must be dismissed.

JUDGMENT REVERSED.